# IN THE COURT OF APPEALS OF IOWA

No. 15-1902
Filed September 28, 2016

**SUZANNE I. SCHLEIS,**
Plaintiff-Appellant,

**vs.**

**TYLER KEINER,**
Defendant-Appellee.

_____

Appeal from the Iowa District Court for Monona County, Edward A. Jacobson, Judge.

The plaintiff appeals from the district court's ruling vacating a temporary injunction. **AFFIRMED AS MODIFIED AND REMANDED.**

Suzanne I. Schleis, Mapleton, appellant pro se.

Sabrina L. Saylor of Crary Huff Law Firm, Sioux City, for appellee.

Considered by Potterfield, P.J., and Mullins and McDonald, JJ.

**POTTERFIELD, Presiding Judge.**

Suzanne Schleis appeals from the district court's order vacating a temporary injunction that controlled the contact Tyler Keiner could have with Suzanne and the parties' minor child. Additionally, the order modified Tyler's child support obligation. On appeal, Suzanne maintains the district court abused its discretion in vacating the injunction and the court should have made the modification of the child support obligation retroactive to the date the application was filed.

**I. Background Facts and Proceedings.**

These parties have been involved in protracted litigation. We outline the prior proceedings only where relevant.

The minor child was born in 2006. Per a 2009 court order, Suzanne and Tyler shared legal custody of the minor child. Suzanne had physical care of the child, and Tyler was to receive liberal parenting time.

In October 2010, Suzanne filed a petition for modification. A hearing on the modification was held in September 2011.

Following the hearing on the modification but before an order was entered on the matter, Suzanne filed an application for a temporary injunction. She asked that Tyler be prevented from contacting her and the parties' minor child due to Tyler's alcohol and drug abuse and his resulting erratic behavior. On November 17, 2011, the district court entered the temporary injunction, which prohibited Tyler or any actor on his behalf (aside from counsel) from contacting Suzanne or the child "until further order of the court." The court included a

written note on the order stating that Tyler could request a hearing on the injunction if he wished to do so; Tyler never requested a hearing.

On December 2, 2011, the court granted Suzanne's request for a modification of the prior decree. Suzanne was given sole legal custody and physical care of the child. Tyler's visitation with the child was only to occur "at such times and places as approved by" Suzanne. Additionally, "Suzanne [was] authorized to provide a visitation schedule up to 60 days in advance and then to follow that schedule, so long as Tyler is doing what he is expected to do in terms of visitation."

Sometime later, Tyler petitioned for contact with the child. When no action was taken regarding his pro se request, Tyler filed a petition for modification, seeking restoration of joint custody and parenting time with a "specific" schedule. He also requested termination of the temporary injunction.

A hearing was held on the petition. Suzanne maintained the injunction should remain in place.

On April 1, 2014, the court filed its "ruling and order." In it, the court found Tyler had not met his burden to establish a material change in circumstances regarding the legal custody of the child. Additionally, the court found "some credence should be applied to [Tyler's] claim of change from the individual he was in 2011 and the individual that he is in 2014." However, the court did not believe that Tyler could "step back into the life of his [child] as though two years apart" did not occur. The court ordered co-parent counseling as well as counseling with Tyler and the child. The court stated the therapist was to determine when the sessions between Tyler and the child were no longer

necessary, and then the previous order—allowing Suzanne to provide a visitation schedule if Tyler was acting appropriately—was to control. The court modified the temporary injunction "to allow necessary telephone contact between the parties to arrange the therapy services. The parties may also have contact during any counseling or therapy sessions."

Tyler appealed the district court's modification ruling, challenging the denial of visitation and the district court's refusal to set forth a visitation schedule.

While Tyler's appeal was still pending, both parties filed at least one motion or application to initiate contempt proceedings against the other. Additionally, Suzanne filed a petition for modification, seeking to modify Tyler's obligations regarding child support and medical support. Suzanne also filed a motion for "clarification of court orders" regarding the scope of the modified temporary injunction.

On March 4, 2015, the district court held a hearing on the all of the outstanding issues. At the hearing, the court advised the parties its ruling was pending the result of Tyler's earlier appeal. Suzanne testified the counselor had released Tyler and the child from therapy sessions, and unsupervised visitation was now taking place between Tyler and the child. Additionally, Suzanne asked whether the child was allowed to be around Tyler's family and girlfriend, or whether the injunction proscribed that. When the court inquired whether Suzanne thought it was improper or had concerns about the child being around those people, she stated her concern was about being in violation of the injunction. She further testified that she would agree to or allow the child to be

around Tyler's family and girlfriend if the court stated that was allowed under the injunction.

On May 6, 2015, a panel of our court decided Tyler's appeal. *See Schleis v. Keiner*, No. 14-1258, 2015 WL 2089690, at *2 (Iowa Ct. App. May 6, 2015). The panel determined the district court had a duty to modify the visitation, rather than allowing the therapist to determine when visitation should begin. The court remanded the issue, ordering the district court to "set forth a specific visitation schedule."

On July 29, 2015, the district court entered an order setting forth the visitation schedule. Among other things, Tyler was to receive alternating weekend parenting time.

On August 10, 2015, the court entered its ruling on Suzanne's petition for modification. In it, the court stated, in part:

> The petition for modification before the court was filed August 28, 2014, by Suzanne Schleis through her attorney. . . . It occurred within a baffling number of filings both before and since relative to the litigation between the parties. At the hearing both parties acknowledged a desire to end the litigation permanently. The court cannot think of a more noble undertaking than to end the feud that has existed between these parties.
> . . . .
> The court notes that this court imposed an injunction in favor of Suzanne and against Tyler preventing any communication by him to her at a time when Tyler was totally out of control in his attitude and actions toward Suzanne. Although two courts have looked at the injunction since, the injunction has never been quashed. It was modified by [another judge] in her ruling, which is part of the ruling that was on appeal.
> Based upon the evidence before this court, the comments made by [the other judge] and the fact that the Court of Appeals has now ordered imposed a regular visitation schedule between Tyler and his [child], the court find that for at least the past year, the temporary injunction (which was meant to be temporary in the first place) serves no useful purpose. In fact, the court finds that

> Suzanne has utilized the injunction to communicate with Tyler and allow Tyler to communicate with her when it suited her needs and to file contempts against Tyler when it did not. The injunction empowered Suzanne far beyond what the court had intended in 2011, and the need to do so no longer exists.

The court dissolved the temporary injunction. Additionally, the court increased Tyler's child support obligation to $1040 per month, effective September 1, 2015.

Suzanne appeals. Tyler does not participate in the appeal.

## II. Standard of Review.

The district court's authority to issue injunctive relief arises in equity, and our review is de novo. *See Max 100 L.C. v. Iowa Realty Co.*, 621 N.W.2d 178, 180 (Iowa 2001). Yet, the decision to issue, vacate, or modify an injunction rests largely within the discretion of the district court. *See id.* "Thus, we will not generally interfere with the district court decision unless the discretion has been abused or the decision violates some principle of equity." *Id.*

Because the modification action was tried in equity, we also consider the modification of the child support obligation de novo. Iowa R. App. P. 6.907.

## III. Discussion.

### A. Injunction.

Suzanne maintains the district court abused its discretion when it vacated the temporary injunction. She maintains the court failed to follow proper procedure, and a hearing was necessary to determine whether the injunction was still warranted.

We acknowledge that typically a separate hearing is held to determine whether a temporary injunction should be dissolved. *See* Iowa R. Civ. P. 1.1509. However, here, we do not believe the district court abused its discretion by

dissolving the injunction without one since the parties appeared before the court on a variety of issues, including the establishment of unsupervised visitation between the father and son and the ongoing communication between the parents to accomplish the visitation.

The request for temporary injunction was granted in 2011, without a request for a hearing from Tyler, due to Tyler's abuse of substances and erratic behaviors. While there was no hearing held specifically to discuss the injunction, multiple hearings were held to determine whether Tyler was again fit to parent the parties' minor child. In the April 2014 modification, the court noted that "some credence should be applied to [Tyler's] claim of change from the individual he was in 2011 and the individual that he is in 2014." Additionally, according to Suzanne's testimony at the hearing in March 2015, the counselor who had met with Tyler and the child had released them from the need for counseling, and unsupervised visits between Tyler and the child were occurring. At the hearing, the court specifically asked Suzanne about her concerns, and she expressed some regarding whether or not she would be in violation of the temporary injunction by meeting with Tyler's relatives. Following the hearing, she filed pro se documents stating her perception of the need for an injunction.

Suzanne complains that the court did not ensure that the need for the injunction had passed, but this complaint seems to invoke procedure for procedure's sake. As we stated above, the parties have already been involved in protracted litigation, and the court was well-versed in their relationship and history; we do not believe another hearing was necessary.

**B. Modification of Child Support.**

Suzanne maintains the district court should have ordered the increase in Tyler's child support obligation—from $585 to $1040 each month—to be effective retroactively. She maintains it should have become effective the date she filed her petition to modify, August 28, 2014.

Iowa Code section 598.21C(5) (2013) provides, "Judgments for child support or child support awards . . . which are subject to a modification proceeding may be retroactively modified only from three months after the date the notice of the pending petition for modification is served on the opposing party." In other words, while the court may order the modification to be effective retroactively, at the earliest it is applicable three months after Tyler received service. *See In re Marriage of Ober*, 538 N.W.2d 310, 313 (Iowa Ct. App. 1995) (stating the word "may" gives the trial court discretion in determining the effective date of the modification order). After reviewing the record, we note that the return of service lists September 5, 2014, as the date Tyler was served with Suzanne's petition for modification. Thus, the district court could have ordered the increased child support to become effective December 5, 2014.

Here, we believe the increase should have been applied retroactively. Based on his testimony at the hearing, Tyler had earned more than $130,000 in both 2013 and 2014, while Suzanne's only income was from social security disability. Tyler could afford to pay the retroactive increase, and we believe it is in the best interests of the minor child. *Cf. In re Marriage of Belcher*, 582 N.W.2d 510, 513 (Iowa 1998) ("The purpose of the child support guidelines is to provide for the best interests of the children by recognizing the duty of both parents to

provide adequate support for their children in proportion to their respective incomes.").

**C. Costs.**

Suzanne maintains that we should assess costs of this appeal to Tyler. We decline to do so.

**IV. Conclusion.**

The district court did not abuse its discretion in dissolving the temporary injunction. We remand this case for entry of a modified support order, making Tyler's child support obligation effective retroactively to December 5, 2014.

**AFFIRMED AS MODIFIED AND REMANDED.**